IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:20-CV-0015 (WOB-CJS)

TARA BLESSING, ET AL.                                    PLAINTIFFS,

VS.                    MEMORANDUM OPINION AND ORDER

CABLE NEWS NETWORK, INC., and
BAKARI SELLERS                                          DEFENDANTS.

This matter is before the Court on Bakari Sellers' motion to dismiss (Doc. 25), Plaintiffs' response thereto (Doc. 30), and Sellers' reply (Doc. 32).

The Court has carefully reviewed this matter and concludes that oral argument is unnecessary. It therefore issues the following Memorandum Opinion and Order.

### Factual and Procedural Background

This is the third lawsuit filed by a group of students from Covington Catholic High School ("CCH"). The instant matter involves only Plaintiffs' claims against Bakari Sellers, a citizen of South Carolina. (Doc. 1 at ¶ 3).

Plaintiffs are Kentucky citizens who attend CCH. (*Id.* at ¶ 2). Plaintiffs were present at the Lincoln Memorial in Washington, D.C. on January 18, 2019, where they participated in the annual "March for Life". (*Id.* at ¶ 5). On that date, the students were part of "the incident" wherein they encountered Native American

1

Nathan Phillips and became the subject of public scrutiny. (*Id.* at ¶ 6).

"At 7:09 a.m. on January 19, 2019, Defendant CNN, through its agent analyst Defendant Sellers, harassed, threatened, and menaced the Plaintiffs stating, in reference to their involvement in the Lincoln Memorial incident, that Nicholas Sandmann was a 'deplorable' and that he and his fellow CCH students, including each of the Plaintiffs, deserved to 'be punched in the face.'"[1] (*Id.* at ¶ 9). Sellers' tweet led to several of his followers making disparaging remarks, like "Can a forehead be considered a drum in such situations?" (Doc 1-1).

In response to these tweets, Plaintiffs brought suit against CNN and Sellers, alleging the following causes of action: (1) civil harassment under KRS § 525.070; (2) civil harassing communications under KRS § 525.080; (3) civil threatening under KRS § 508.080; (4) civil menacing under KRS § 508.050; (5) defamation; (6) invasion of privacy; and (7) aiding and abetting. (*Id.* at 7-11).

Sellers filed a motion to dismiss, arguing that the Court lacks personal jurisdiction over him concerning Plaintiffs' claims, and alternatively, Plaintiffs fail to state a claim on First Amendment grounds. (Doc. 25).

---

[1] The tweet, in full, reads as follows:
"He is a deplorable. Some ppl can also be punched in the face." (Doc. 1-1).

*Analysis*

Plaintiffs concede that the facts surrounding the incident at the Lincoln Memorial and their allegations of Kentucky's "true threat" criminal statutes mirror two prior cases already decided by this Court: *Doe v. Griffin*, Cov. Civil Case No. 2:19-cv-126, 2020 WL 1816139 (E.D. Ky. Apr. 9, 2020); and *Blessing v. Chandrasekhar, MD, FACS*, Cov. Civil Case No. 2:20-cv-16, 2020 WL 3477021 (E.D. Ky. June 25, 2020). (Doc. 30 at 1).

In *Griffin*, this Court found it did not have personal jurisdiction over the defendant under either the Kentucky long-arm statute or the due process clause of the United States Constitution because the alleged "true threat" comments on Twitter did not constitute a tortious act in Kentucky (because the statements were made out-of-state in California), and plaintiff's injury alone cannot establish minimum contacts for specific personal jurisdiction. 2020 WL 1816139, at *3-6.

Drawing from the *Griffin* opinion, in *Chandrasekhar*, this Court found (for the same reasons) that the plaintiffs could not meet the standards set forth in Kentucky's long-arm statute or under the federal due process clause. 2020 WL 3477021, at *2-5. These cases are pending before the Sixth Circuit.

The following analysis draws from these previous opinions to resolve this matter. The issue is whether there is a distinction to establish personal jurisdiction for the Court to be able to

3

consider whether Plaintiffs state facially plausible claims. Because Plaintiffs proffer no factual or legal distinctions to carry their burden of establishing personal jurisdiction, Sellers' motion to dismiss must also be granted.

A.  **Sellers' Motion to Dismiss Must be Granted for Lack of Personal Jurisdiction Via Kentucky's Long-Arm Statute and Federal Due Process**

Plaintiffs ask the Court to adjudicate the claims against Sellers by exercising specific personal jurisdiction over him. (Doc. 30 at 10). "A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997).

To exercise specific personal jurisdiction, Kentucky law dictates a two-step process, wherein the Court must first consider Kentucky's long-arm statute, to determine whether "the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). If the defendant's alleged conduct does not fall within any enumerated category listed in the statute, then he is not subject to personal jurisdiction in Kentucky. *Id.* If the conduct is within an enumerated category, then the court must assess whether "exercising personal jurisdiction over the non-resident defendant offends his federal due process rights." *Id.* But the scope of

4

Kentucky's long-arm statute inquiry is narrower than the inquiry to federal due process. *Id.* at 55-57.

### 1. Kentucky's Long-Arm Statute

First, Sellers argues that Plaintiffs' cannot establish any of the nine subparts of the Kentucky long-arm statute. (Doc. 25 at 4). Although Plaintiffs' complaint does not specify which subsection of the long-arm statute they are proceeding under,[2] their response states that they are relying on KRS § 454.210(2)(a)(3), which provides for personal jurisdiction over a defendant when a plaintiff's claim arises out of the defendant's "tortious injury by an act or omission *in this Commonwealth*". (Doc. 30 at 10, n. 42) (emphasis added). Thus, the question becomes what tortious act or omission did Sellers commit "*in Kentucky*" to satisfy this subsection of Kentucky's long-arm statute?

Plaintiffs argue that the tweets constituted an act committed in Kentucky under its "true threat" criminal statutes (rendered civilly actionable under KRS § 446.070) because the "violation of Kentucky's criminal statutes was an unlawful *action* that occurred in Kentucky, and not only a harmful *consequence* that occurred in Kentucky" no matter where the tweet comes from. (*Id.* at 10). Plaintiffs do not allege, however, that any of the tweets were made in Kentucky.

---

[2] *See* (Doc. 1 at ¶ 4) ("Pursuant to . . . KRS § 454.210(a)(2) . . . this Court has jurisdiction over this case").

This Court has already found that Kentucky law is contrary to this position. In short, "Kentucky courts routinely find that a defendant must be present in the Commonwealth when he starts an action that causes a tort in order for section 454.210(2)(a)(3) to apply." *Crum v. Estate of Mayberry*, Civil No. 14-84-ART, 2014 WL 7012122, at *5 (E.D. Ky. Dec. 11, 2014).[3] As the Court noted in *Crum*, the Kentucky Court of Appeals held in *Pierce v. Serafin*, "that a defendant did not commit an act in the Commonwealth when he sent a letter from outside the state that contained statements that caused injury in Kentucky". 787 S.W.2d 705, 706 (Ky. Ct. App. 1990). Instead, the letter merely caused a consequence, which did not fall under the plain language of KRS § 454.210(2)(a)(3). *Id.*

This reasoning is routinely employed by federal courts applying the Kentucky long-arm statute. *See Management Registry Inc. v. Cloud Consulting Partners, Inc.*, Civil Action No. 3:19-cv-00340, at *4 (W.D. Ky. Sept. 18, 2019) ("Since the Kentucky Supreme Court's decision in *Caesar Riverboat Casino, LLC v. Beach*, several cases have rejected the argument that an out-of-state defendant commits an 'act or omission in this Commonwealth' by sending a tortious communication into Kentucky."); *My Retirement Account Servs. v. Alternative IRA Servs., LLC*, Civil Action No.

---

[3] In *Crum*, the court found that it did not have personal jurisdiction over a defendant who plaintiff alleged stole money from his bank account. 2014 WL 7012122, at *5. The defendant resided in Michigan and, while his acts caused plaintiff harm in Kentucky, the unlawful withdrawals occurred in Michigan. *Id.*

5:19-cv-122, 2019 WL 5298718, at *4 (W.D. Ky. Oct. 17, 2019) (finding no personal jurisdiction under KRS § 454.210(a)(2)(3) where plaintiffs alleged that the actions of California defendants were directed at, and caused harm in, Kentucky); *Perkins v. Bennett*, Civil Action No. 3:13-cv-695, 2013 WL 6002761, at *6-7 (W.D. Ky. Nov. 12, 2013) (holding that out-of-state defendants did not commit an act within Kentucky where the alleged tortious act of fraud and misrepresentation were committed via telephone and email from South Carolina); *Barker v. Collins*, Civil Action No. 3:12-cv-372, 2013 WL 3790904, at *5 (W.D. Ky. July 19, 2013) (finding that plaintiffs' claims of "extortion by telephone" were not "acts" in Kentucky that could trigger section (2)(a)(3)).

Plaintiffs try to distinguish this authority by arguing that true threat communications are not the same as out-of-state communications such as private letters, emails, or fraudulent withdrawals from out-of-state ATMs because the tweets violated Kentucky criminal and harassment statutes by instilling fear in the Plaintiffs when they read the tweets in Kentucky. (Doc. 30 at 10-11). However, consistent with this Court's holding in *Griffin* and *Chandrasekhar*, Plaintiffs' argument is misplaced.

To start, Plaintiffs' reliance on the criminal "true threat" cases do not address the question of whether a forum has personal jurisdiction to hold a defendant civilly liable because the cases consider what type of threats fall within the ambit of certain

7

federal criminal statutes. *United States v. Alkhabaz*, 104 F.3d 1492, 1496 (6th Cir. 1997) ("Applying our interpretation of the statute to the facts before us, we conclude that the communications between Baker and Gonda do not constitute 'communication[s] containing a threat' under Section 876(c)"); *United States v. Freeman*, 176 F.3d 575, 578 (1st Cir. 1999) (same); *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) (same); *United States v. Bowker*, 372 F.3d 365 (6th Cir. 2004) (prosecution for violation of federal telecommunications law for using telephone without identifying self to communicate threat, harass or annoy pursuant to 47 U.S.C. § 233(a)(1)(C) in the Northern District of Ohio); *United States v. Dekelaita*, 875 F.3d 855 (6th Cir. 2017) (criminal prosecution for conspiracy to defraud the United States government in the Northern District of Illinois); *United States v. Elliott*, 876 F.3d 855 (6th Cir. 2017) (criminal prosecution for violation of federal law regarding conspiracy to distribute oxycodone).

Beyond this, Plaintiffs' theory fails because the long-arm statute does not list an out-of-state tweet causing harm to a Kentucky citizen as an enumerated basis like it did with KRS 454.210(2)(a)(9), which provides for personal jurisdiction where a defendant directs a telephone or charitable solicitation into the Commonwealth. Under well-known statutory interpretation methodologies *expression unius est exclusion alterius* and the rule

against superfluity,[4] it is clear from other sections of the statute that if the legislature wished to include such a specific basis, it knew how to do so. *See* Ky. Rev. Stat. § 454.210(2)(a)(9); *see also Crum*, 2014 WL 7012122, at *5 ("The Kentucky legislature made its choice when it drafted the statute. The Court must respect that choice. The legislature can always expand the reach of the long-arm statute to catch additional torts"); *Barker*, 2013 WL 3790904, at *5 (subsection (a)(4) of the Kentucky long-arm statute rendering personal jurisdiction over an out-of-state defendant for "causing a tortious injury in the Commonwealth by an act or omission outside the Commonwealth" would be rendered superfluous because "every set of facts which gave rise to tortious injury could be brought within the terms of paragraph three"). Again, the Kentucky Supreme Court determined that the scope of Kentucky's long-arm statute is narrower than federal due process. *Caesars Riverboat Casino*, 336 S.W.3d at 55-57.

---

[4] *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002) ("The cannon [of *expression unius*] depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which [is] abridged in circumstances supporting a sensible inference that the term left out must have been meant to be excluded") (quoting E. Crawford, Construction of Statutes 337 (1940) (*expression unius* "properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference")); *see also Corley v. United States*, 556 U.S. 303, 314 (2009) (states should be interpreted to avoid superfluity) (quoting *Hibbs v. Winn*, U.S. 88, 101 (2004) ("one of the most basic interpretive canons is that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . .")).

Nor may Plaintiffs rely on KRS § 446.070 for their proposition that since Kentucky statutes criminalize certain acts of harassment, threatening, and menacing, the legislature provides a civil remedy for these violations, making said violation an act in Kentucky for personal jurisdiction purposes. (*Id.*) As this Court found in *Chandrasekhar*, "the fact that a legislature creates a civil case of action does not, *ipso facto*, answer the question of whether a defendant is subject to personal jurisdiction when sued for such a claim." 2020 WL 3477021, at * 3.

But as Sellers points out, the better question is whether he was acting as an employee of CNN when he tweeted his statement. (Doc. 25 at 6) ("Unable to establish jurisdiction over Mr. Sellers alone, Plaintiffs attempt to lump him with CNN as 'CNN/Sellers.' Plaintiffs assert [in their complaint], without any factual basis, that Mr. Sellers is an 'employee,' 'agent,' or 'agent analyst' for CNN") (quoting Doc. 1 at ¶¶ 1, 4, 9). Kentucky's long-arm statute provides that "[a] court may exercise personal jurisdiction over a person who acts directly *or by an agent*." Ky. Rev. Stat. § 454.210(2)(a) (emphasis added).

As permitted with motions to dismiss pursuant to Rule 12(b)(2),[5] Sellers attaches an affidavit declaring that he is an

---

[5] *Serras v. First Tenn. Bank N.A.*, 875 F.2d 1212, 1214 (6th Cir. 1989) ("If [the Court] decides that the motion [to dismiss pursuant to Rule 12(b)(2)] can be ruled on before trial, the court 'may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may

independent contractor who occasionally provides on-air appearances when requested by CNN. (Doc. 25-2 at ¶ 11). Moreover, Sellers declares the tweet came from his "personal Twitter account, and not as an agent, employee or 'agent analyst' of CNN." (*Id.* at ¶ 12). Plaintiffs do not contest Sellers' statements. (Doc. 30).

Plaintiffs bear the burden of establishing personal jurisdiction over a defendant. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458(6th Cir. 1991) ("the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction); *Lattanzio v. Brunacini*, 2018 WL 1401979, at *3 (E.D. Ky. Mar. 20, 2018) (holding the plaintiff "failed to satisfy the burden of setting forth specific facts establishing that [defendant's] conduct fits within any of the categories enumerated in Kentucky's long-arm statute"). Therefore, Plaintiffs' silence proves fatal. As a result, the Court lacks personal jurisdiction over Sellers under Kentucky's long-arm statute. This conclusion alone is dispositive, and Sellers' motion to dismiss must be granted.

**2. Federal Due Process**

Second, Sellers argues that even if the Plaintiffs could satisfy Kentucky's long-arm statute, this forum lacks personal jurisdiction to hear this case under the due process clause of the

---

conduct an evidentiary hearing on the merits of the motion.'") (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)).

United States Constitution. (Doc. 25 at 7). Plaintiffs argue that consistent with the "effect test" created in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) and *Calder v. Jones*, 465 U.S. 783 (1984), and modified by *Walden v. Fiore*, 571 U.S. 277 (2014), there are sufficient minimum contacts to create specific personal jurisdiction. (Doc. 30 at 10-11). While the Court does not need to reach this inquiry, it did so in both *Griffin* and *Chandrasekhar* to ensure a complete record for another possible appeal.

To satisfy the federal due process analysis, Plaintiffs must "establish with reasonable particularity sufficient 'minimum contacts' with [Kentucky] so that the exercise of jurisdiction over [Sellers] would not offend 'traditional notions of fair play and substantial justice.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This inquiry of "whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84 (internal quotations omitted). For a court to exercise specific personal jurisdiction consistent with due process, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. To show this, each of the defendant's contacts must be assessed individually. *Calder*, 465 U.S. at 790 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

As this Court has already found, *Walden* specifically rejects the application of the "effects test" for which Plaintiffs advocate. 571 U.S. at 288. The Supreme Court noted that "[f]irst, the relationship must arise out of contacts that the 'defendant himself' creates with the forum State. *Id.* at 284 (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Second, the minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. Thus, the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. And, due process "requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (citations omitted).

With these principles in mind, the Supreme Court concluded that the defendant in question—a DEA agent who seized money from plaintiffs at the airport—could not be subject to personal jurisdiction in Nevada, where the plaintiffs lived. *Id.* at 288. The Court found that the appellate court erred in reasoning that defendant's knowledge of the plaintiff's strong connections to Nevada, coupled with the foreseeability that they would suffer harm there, satisfied the minimum contacts inquiry. *Id.* at 289. The Court stated:

This approach to the "minimum contacts" analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis . . .. It also obscures the reality that none of petitioner's challenged conduct had anything to do with Nevada itself.

**Relying on *Calder*, respondents emphasize that they suffered the "injury caused by petitioner's allegedly tortious conduct (i.e., the delayed return of their gambling funds) while they were residing in the forum . . .. This emphasis is likewise misplaced. As previously noted, *Calder* makes clear that mere injury to a forum resident is not a sufficient connection to the forum.** Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. **The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.**

*Id.* at 289-90 (emphasis added).

Here, the tweets did not target Kentucky, Sellers did not avail himself of any benefits in or through Kentucky, and his only other contact comes from an unrelated speech he gave in Frankfort, Kentucky. (Doc. 25-2 at ¶ 9). Unlike *Calder*, Plaintiffs have not shown the tweets were directed at Kentucky like the circulation of the *National Enquirer* article in California. 465 U.S. at 790. Nor is it like *Keeton*, where the Supreme Court found the defendants regularly circulated magazines that were directly targeted at the forum through "monthly sales." 465 U.S. at 774.

14

In similar situations, courts have rejected the notion that due process may be satisfied by tweets that are not specifically directed at a forum state. *See Vangheluwe v. Got News, LLC*, 365 F.Supp.3d 850, 863 (E.D. Mich. Feb. 6, 2019) (declining to exercise personal jurisdiction over two defendants who tweeted about plaintiff, a Michigan resident; noting that "[t]hese allegations were not about Michigan in particular but about Joel in particular—wherever he might have been living"); *Edwards v. Schwartz*, 378 F.Supp.3d 468, 494 (W.D. Va. Mar. 20, 2019) (declining to exercise personal jurisdiction over defendants who posted about plaintiff on Twitter and other social media platforms, noting "[t]here is no factual matter in Edwards' pleadings suggesting that the authors of these communications took affirmative steps to direct these communications into Virginia or had any intent to target or focus on Virginia readers or otherwise avail themselves of the benefits and protections of the laws of Virginia"); *Planet Aid, Inc. v. Reveal, Center for Investigative Reporting*, 2017 WL 2778825, at *10 (D. Md. June 26, 2017) ("Sending three tweets and four emails related to the Podcast and Articles over a period of a year and a half are not 'so substantial that they amount to a surrogate' for Smith and Walters' presence in Maryland").

The two Sixth Circuit cases cited by Plaintiffs are also distinguishable because in both cases, the defendants challenging personal jurisdiction had specifically directed numerous

intentional, fraudulent communications at the plaintiffs themselves in the forum state over considerable periods of time. *Power Investment, ILC v. SL EC LLC*, 927 F.3d 914 (6th Cir. 2018); *Neal v. Jansen*, 270 F.3d 330 (6th Cir. 2001). The tortious act alleged against Sellers involves his single tweet and some responses by his followers.

*Walden* makes clear that even if Plaintiffs could satisfy Kentucky's long-arm statue, they could not show that an exercise of specific personal jurisdiction over Sellers would comport with due process. Plaintiffs clearly have substantial connections to Kentucky as residence. But, as the Court of Appeals of Kentucky recently emphasized, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 342 (Ky. Ct. App. 2019) (quoting *Walden*, 571 U.S. at 291). Sellers' tweet is not enough to establish minimum contacts in this forum. Therefore, an exercise of personal jurisdiction over Sellers in this matter would also not comport with the federal due process standards.

Thus, having reviewed this matter, and the Court being advised,

IT IS ORDERED that Sellers' motion to dismiss (Doc. 25) be, and is hereby, **GRANTED**.

16

This 7th day of October 2020.



Signed By:

***William O. Bertelsman*** WOB

**United States District Judge**